713 So.2d 1250 (1998)
LIBERTY MUTUAL INSURANCE COMPANY, Liberty Mutual Fire Insurance Company, and Liberty Insurance Corporation
v.
LOUISIANA INSURANCE RATING COMMISSION.
No. 97 CA 1043.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
*1251 Daniel J. Balhoff, John W. Perry, Thomas E. Balhoff, Judith Atkinson, Baton Rouge, for plaintiffs/appellants Liberty Mutual Insurance Company, et al.
James Hrdlicka, Attorney General's Office, and Gordon A. Pugh, Baton Rouge, for defendant/appellee Louisiana Insurance Rating Commission.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
This is an appeal by plaintiffs from a trial court judgment, maintaining defendant's exception raising the objection of no cause of action and dismissing plaintiffs' petition. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (hereinafter collectively referred to as "Liberty Mutual") sell workers' compensation insurance in Louisiana. Defendant, the Louisiana Insurance Rating Commission ("the LIRC"), a division of the Louisiana Department of Insurance, regulates insurance rates and reviews applications for rate changes brought by insurers.
Prior to the creation of the Louisiana Workers' Compensation Corporation, LSA-R.S. 23:1393, workers' compensation insurance was made available to Louisiana employers through the "voluntary market" and the "involuntary market," or "assigned risk pool." The involuntary market or assigned risk pool consisted of employers who were unable to obtain workers' compensation coverage from insurers on a voluntary basis. As a requirement of writing workers' compensation insurance in Louisiana, all licensed insurance carriers were required to participate in the involuntary market or assigned risk pool. See Liberty Mutual Insurance Company v. Louisiana Insurance Rating Commission, 589 So.2d 70, 71 (La.App. 1st Cir. 1991), writ denied, 590 So.2d 597 (La.1992).
According to Liberty Mutual, the LIRC set the rates insurers could charge for insurance through the involuntary market at an artificially low level, which rates were insufficient to cover the losses and expenses incurred in that market. In an effort to avoid losses incurred through its participation in the involuntary market, Liberty Mutual requested rate increases through the LIRC for rates charged in both the voluntary and involuntary *1252 markets. The LIRC did not grant the rate increases to the full extent sought by Liberty Mutual. However, except for the 1989 request for a rate increase, Liberty Mutual did not appeal these orders administratively or otherwise seek judicial review.
In 1989, Liberty Mutual requested a 65% rate increase in its rates for the voluntary market, but the LIRC only granted a 35% rate increase. Liberty Mutual filed suit to challenge this ruling by the LIRC, and both the Nineteenth Judicial District Court and this court affirmed the LIRC's ruling. Liberty Mutual Insurance Company, 589 So.2d at 73.
Subsequently, in 1993, Liberty Mutual filed suit in federal court against the Louisiana Department of Insurance, the LIRC and several past and present members of the LIRC, claiming that defendants had violated the United States and Louisiana Constitutions in setting insurance rates for the period of 1985 to 1992. On the same day, Liberty Mutual also filed the instant state court action, naming the same defendants and raising the same claims as in the federal court action, but Liberty Mutual withheld service of the state court petition.
The primary allegation in each of the suits was that the LIRC, from 1985 to 1992, had set insurance rates which were confiscatorily low, resulting in a "taking" of Liberty Mutual's property without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, § 4 of the Louisiana Constitution. Liberty Mutual also alleged due process violations and a Commerce Clause claim.
In the federal suit, the United States Fifth Circuit Court of Appeals held that Liberty Mutual had failed to state a claim for violation of procedural due process or a violation of the Commerce Clause. With regard to its Takings Clause claim, the Fifth Circuit held that this claim was unripe, because Liberty Mutual had failed to either seek compensation at the state court level or demonstrate that a state action for compensation was unavailable to it. Liberty Mutual Insurance Co. v. Louisiana Department of Insurance, 62 F.3d 115, 117-118 (5th Cir.1995). Thus, the Fifth Circuit remanded to the district court with instructions to dismiss all claims. On remand, the federal district court dismissed Liberty Mutual's federal claims with prejudice, except for the Takings Clause claim which was dismissed without prejudice as unripe. All state law claims were also dismissed without prejudice.
Thereafter, on March 14, 1996, Liberty Mutual filed an "Amended, Restated and Superseding Petition" in the instant suit, naming the LIRC as the sole defendant and seeking compensation from the LIRC for the "taking" of Liberty Mutual's property, i.e., the right to earn a reasonable rate of return. Liberty Mutual sought compensation through an action for "inverse condemnation" or other state remedy, and also sought attorney's fees and costs.
In response to the amending and superseding petition, the LIRC filed peremptory exceptions raising the objections of prescription, res judicata and no cause of action. Following a hearing on the exceptions, the trial court maintained the LIRC's exception of no cause of action and dismissed Liberty Mutual's suit with prejudice.
From the judgment dismissing its suit, Liberty Mutual appeals, contending that the trial court erred in: (1) maintaining the exception of no cause of action; and (2) denying Liberty Mutual's motion to amend its amended petition.

DISCUSSION

No Cause of Action
The purpose of an exception of no cause of action is to ascertain the adequacy in law of the petition. The court must accept the well-pleaded allegations as true, and the issue is whether, based on the allegations presented in the petition alone, the plaintiff is entitled to the relief sought. LSA-C.C.P. art. 927(A)(4); Thomas v. Armstrong World Industries, Inc., 95-2222, pp. 3-4 (La.App. 1st Cir. 6/28/96); 676 So.2d 1185, 1187, writ denied, 96-1965 (La.11/1/96); 681 So.2d 1272. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding a cause of action stated. Thomas, 95-2222 at p. 4; 676 So.2d at 1187.

*1253 Inverse Condemnation
Louisiana law recognizes a cause of action for inverse condemnation. Article I, § 4 of the Louisiana Constitution requires that a property owner shall be compensated for property taken or damaged by the state or its political subdivisions:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit....
The Louisiana Supreme Court has recognized that the action for inverse condemnation arises out of the self-executing nature of the constitutional command to pay just compensation. State, Through Department of Transportation and Development v. Chambers Investment Company, Inc., 595 So.2d 598, 602 (La.1992). The action for inverse condemnation provides a procedural remedy to a property owner seeking compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation has commenced. Chambers Investment Company, Inc., 595 So.2d at 602. Moreover, the Supreme Court has explained that the action for inverse condemnation is available in all cases where there has been a taking or damaging of property where just compensation has not been paid, without regard to whether the property is corporeal or incorporeal. Chambers Investment Company, Inc., 595 So.2d at 602.
In determining whether a claimant is entitled to eminent domain compensation in an action for inverse condemnation, the Supreme Court has adopted a three-prong analysis: (1) whether a person's legal right with respect to a thing or an object has been affected; (2) if it is determined that property is involved, whether the property, either a right or a thing, has been taken or damaged in a constitutional sense; and (3) whether the taking or damaging is for a public purpose under Article I, § 4. Chambers Investment Company, Inc., 595 So.2d at 603.
We note that in similar situations involving public utilities, the Louisiana Supreme Court has articulated that although a public service commission may be constitutionally charged with fixing and changing public utility rates, a violation of constitutional rights, such as confiscation of property (i.e., the setting of confiscatorily low rates), may require a court to exercise authority to grant relief from the constitutional abuse. South Central Bell Telephone Company v. Louisiana Public Service Commission, 340 So.2d 1300, 1301 (La.1976); South Central Bell Telephone Company v. Louisiana Public Service Commission, 256 La. 497, 504, 236 So.2d 813, 816 (1970). However, in each of those instances, the plaintiff sought injunctive relief from the enforcement of the rates set rather than monetary damages against the commission which fixed the rates, as Liberty Mutual does in the case presently before us.

Whether Liberty Mutual Has Stated a Cause of Action Herein
Pretermitting whether a cause of action for inverse condemnation actually exists in favor of an insurance company for monetary damages against the state agency which allegedly set confiscatorily low rates, we conclude that, under the facts alleged herein, no cause of action, if any exists under Louisiana law, is available to Liberty Mutual.

Claims Excluding 1989 Rate Request
In their amending and superseding petition, Liberty Mutual seeks damages in the amount of $164,000,000.00, as just compensation from the LIRC for its actions in setting confiscatorily low insurance rates. However, it is undisputed that Liberty Mutual never sought review of the rates in question, with the exception of the rates set for 1989. For the reasons which follow, we conclude that no cause of action could have accrued to Liberty Mutual for the years in which it did not seek administrative and/or judicial review of the rulings of the LIRC.
Insurers have express statutory recourse with respect to the LIRC's rate making decisions. These insurers may request administrative hearings and judicial review. LSA-R.S. 22:1411, 22:1418, 22:1351 et seq. and 49:950 et seq. Upon judicial review, the court may modify, reverse or set aside the administrative order where substantial rights of the appellant have been prejudiced by an administrative finding, inference, conclusion *1254 or decision which is, among other criteria, in violation of constitutional or statutory provisions. LSA-R.S. 22:1363; LSA-R.S. 49:964. In all years at issue except 1989, Liberty Mutual chose to ignore the statutory remedies available to it.
As a general rule, a person aggrieved by the action of a state agency must exhaust all administrative remedies before being entitled to judicial review. The rationale behind this requirement is that matters of agency expertise should first be addressed by the administrative tribunals created by the legislature to address those issues. Part of the function of the exhaustion doctrine is to give the agency whose decision is under attack an opportunity to review, supplement and, if necessary, correct its decision. Polk v. State, Through Department of Transportation and Development, 538 So.2d 239, 250 (La.1989).
In addressing a federal takings claim, the United States Supreme Court has likewise held: "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985).
Applying these principles to our consideration of the allegations of the petition before us, we conclude that because Liberty Mutual failed to seek administrative and/or judicial review of the LIRC's denial of its rate requests, except with regard to the 1989 request, it cannot now assert a cause of action against the LIRC for monetary damages for inverse condemnation based on those rulings.
We conclude that Liberty Mutual cannot assert a cause of action for damages by claiming that the state, through the LIRC, has denied it just compensation because Liberty Mutual did not avail itself of the statutory remedies provided to it to address the adequacy of the rates imposed. To hold contrary would have the effect of never affording the LIRC an opportunity to review, supplement and, if necessary, correct its decision.[1] Additionally, because Liberty Mutual never appealed the LIRC's denials of requested rate increases, Liberty Mutual took no action to present this issue for judicial review and therefore, the courts were not given the opportunity to modify or reverse the allegedly unreasonably low rates. Thus, even accepting the allegations of Liberty Mutual's petition as true, Liberty Mutual has no cause of action available to it for damages allegedly arising from the rates set for these years.

Claims Involving the 1989 Rate Request
With regard to Liberty Mutual's 1989 rate request, we find that, although Liberty Mutual sought judicial review of the LIRC's ruling, that ruling only involved a request for a rate change in the voluntary market.
The basis of Liberty Mutual's instant claim of a taking of its property without just compensation is that the rates set by the LIRC for the involuntary market were set at such artificially low levels as to be confiscatory. However, Liberty Mutual never requested a rate change for the involuntary market in 1989, much less seek administrative or judicial review of any denial of a rate change in that market.
In affirming the LIRC's decision on the 1989 rate increase request, this court concluded that the LIRC was not arbitrary or capricious in classifying the risks associated with the voluntary market separately from those associated with the involuntary market and in refusing to include losses from the involuntary market as an expense in the voluntary market. Thus, this court determined that Liberty Mutual's remedy appeared to lie in applying for a rate increase *1255 in the involuntary market sufficient to make its participation in the involuntary market profitable. Liberty Mutual Insurance Company, 589 So.2d at 73.
Liberty Mutual made no such request for 1989. Thus, we likewise conclude that no cause of action ever accrued to Liberty Mutual for compensation based on allegedly confiscatory rates of return resulting from artificially low rates in the involuntary market for 1989.
For these reasons, we find no error in the trial court's dismissal of Liberty Mutual's suit on the basis that Liberty Mutual fails to state a cause of action upon which relief may be granted.

Leave to Amend the Petition
On the day following the trial court's oral ruling on the exception of no cause of action, but prior to a written judgment having been signed, Liberty Mutual filed a motion to amend its amended and superseding petition to include allegations that discretionary function immunity[2] could not be used to abrogate the constitutional right of just compensation, via inverse condemnation, and, thus, that the defense of discretionary function immunity cannot be applied herein. The trial court denied the motion to amend, and Liberty Mutual challenges that ruling through this assignment of error.
Pursuant to LSA-C.C.P. art. 934, when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the court shall not dismiss the suit without first affording the plaintiff an opportunity to amend its petition. Northshore Regional Medical Center v. Parish of St. Tammany, 96-0717, p. 8 (La.App. 1st Cir. 12/20/96); 685 So.2d 614, 617.
However, the decisions of both the trial court and this court on the exception of no cause of action are not based upon the discretionary immunity defense. Any amendment to the petition attempting to set forth a basis for rejecting such a defense would not remove the grounds of the objection of no cause of action maintained herein. Liberty Mutual has failed to allege any grounds to support an amendment to its petition which would cure the objections the LIRC has raised in its peremptory exceptions. Accordingly, we find no error in the trial court's refusal to allow Liberty Mutual to amend its amending and superseding petition. This assignment of error likewise is without merit.

CONCLUSION
For the above and foregoing reasons, the January 21, 1997 judgment of the trial court, maintaining the Louisiana Insurance Rating Commission's exception of no cause of action, and dismissing Liberty Mutual's suit with prejudice, is affirmed. Costs of this appeal are assessed against plaintiffs.
AFFIRMED.
NOTES
[1] Liberty Mutual states in paragraph 29 of its amending and superseding petition that it "took the necessary state administrative and/or judicial steps required of it ... prior to seeking relief and also sought relief in federal court ... as described in Paragraph 51 [of the petition] prior to seeking relief" in the instant suit. However, as Paragraphs 44, and 51 through 55 of the petition indicate, the only suits filed were the instant suit and a duplicate suit filed in federal court, and the limited challenge to the 1989 rate ruling discussed below. It is undisputed that no other administrative or judicial review was sought.
[2] See LSA-R.S. 9:2798.1.