**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 3, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30558
_____

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE COMPANY
AND LIBERTY INSURANCE CORPORATION

Plaintiffs-Appellants

versus

JAMES H. BROWN, DOUGLAS D. GREEN, SHERMAN A. BERNARD, SR., DUANE
COWART, WAYNE DUCOTE, GAIL N. McKAY, JIMMY PATTERSON, EDWARD
ROBERSON, CHARLES KIRSCH, JR., CHRIS FASER, III, and OTHER AS YET
UNDETERMINED INDIVIDUALS WHO ARE MEMBERS OF THE LOUISIANA
INSURANCE RATING COMMISSION

Defendants-Appellees

_____

Appeal from the United States District Court for
the Middle District of Louisiana
_____

Before DUHÉ, BARKSDALE and DENNIS, Circuit Judges.

Dennis, Circuit Judge:

Liberty Mutual Insurance Co. ("Liberty Mutual") sued the
defendants, members of the Louisiana Insurance Rating Commission
("LIRC"), arguing that the rates for workers' compensation
insurance set by the LIRC over a period of several years were
confiscatory. Liberty Mutual argues that these rates thus
constitute an impermissible taking without compensation in
violation of the Fifth Amendment as incorporated by the Fourteenth.

1

The district court dismissed Liberty Mutual's claims *sua sponte* based on its determinations that Liberty Mutual's claims were not ripe and were precluded from ever ripening.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Liberty Mutual provides various types of insurance coverage in Louisiana, including workers' compensation insurance policies.  The rates for workers' compensation insurance are set by the LIRC.  At one point in time, Louisiana divided the market for workers' compensation insurance into a voluntary market and an involuntary market, the latter of which is comprised of consumers who cannot obtain insurance in the voluntary market.  Insurers were required to serve the involuntary market as well as the voluntary market.

Liberty Mutual argues that, from 1985 to 1992, the LIRC set rates in both the voluntary and involuntary markets so low that, in combination, they were confiscatory and thus constituted a taking by the state.  Louisiana law provides for an appeal process from decisions of the LIRC, which consists of administrative hearings followed by judicial review.  Liberty Mutual did not utilize these procedures except with respect to the year 1989.  Regarding the 1989 rates, Liberty Mutual utilized these procedures to seek a prospective rate increase in the voluntary market only.  The state courts did not give Liberty Mutual the relief it requested but left Liberty Mutual free to apply for a rate increase in the involuntary market; Liberty Mutual did not do so.

2

Bypassing the administrative and judicial remedies made available by Louisiana law, Liberty Mutual filed suit in federal district court on January 6, 1993, alleging that Louisiana had taken Liberty Mutual's property without just compensation in violation of the Fifth Amendment. The district court decided to allow some limited discovery, and the defendants filed an interlocutory appeal of that discovery ruling. A panel of this court then dismissed Liberty Mutual's taking claim as unripe, noting that in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court held that a takings claim against a state did not ripen until (1) the administrative body rendered a final decision and (2) the owner had resorted to state judicial remedies for just compensation. *Liberty Mutual Ins. Co. v. Louisiana Dept. of Ins.*, 62 F.3d 115, 117 (5th Cir. 1995). The panel stated that "it is an open question whether Louisiana provides a compensation remedy for the kind of deprivation alleged here, and Liberty Mutual should have first posed the question to the state courts before bringing it here." *Id.* at 117-18. The panel further held that "[t]his reasoning applies equally to the one order for which Liberty Mutual sought judicial review in the Louisiana state courts [the appeal of the 1989 voluntary market rate]. That claim rested on the takings clause and sought prospective relief only in the voluntary market and only in the form of a rate increase, not damages." *Id.* at 118.

3

The panel thus remanded the action to the district court with instructions to dismiss the takings claim as unripe.

Liberty Mutual had also filed a state court action in 1993 alleging a taking without just compensation, but Liberty Mutual had withheld service of the state court petition. After the federal case was dismissed, Liberty Mutual then filed an "Amended, Restated and Superseding Petition" in the lawsuit in Louisiana state court. The trial court dismissed the suit, and the Louisiana First Circuit Court of Appeal affirmed. *Liberty Mutual Ins. Co. v. Louisiana Ins. Rating Comm'n*, 713 So.2d 1250 (La. App. 1st Cir. 1998). The court noted that Louisiana law generally recognizes a cause of action for inverse condemnation. *Id.* at 1253. But because Liberty Mutual had not exercised the administrative and judicial review remedies provided insurers by Louisiana statute,[1] the court ruled

---

[1] Like this court's 1995 opinion dismissing Liberty Mutual's claims, the Louisiana appellate court did not find a meaningful distinction between the 1989 year, in which Liberty Mutual utilized the statutory procedures to seek injunctive relief in the voluntary market only, and the other years in which Liberty Mutual took no action to avail itself of those statutory procedures. 713 So.2d at 1254-55. The court reasoned:

> "[T]his court determined that Liberty Mutual's remedy appeared to lie in applying for a rate increase in the involuntary market sufficient to make its participation in the involuntary market profitable. Liberty Mutual made no such request for 1989. Thus, we likewise conclude that no cause of action ever accrued to Liberty Mutual for compensation based on allegedly confiscatory rates of return resulting from artificially low rates in the involuntary market for 1989."

4

that no cause of action had accrued to Liberty Mutual; thus, the state appellate court did not answer the more specific question of whether an insurance company could sue for monetary damages stemming from alleged confiscatory rates. *Id.* at 1253-55. The Louisiana Supreme Court denied writs. *Liberty Mut. Ins. Co. v. La. Ins. Rating Comm'n*, 728 So.2d 396 (La. 1998).

After its state court action was dismissed without an examination of the merits of its claim, Liberty Mutual again filed suit in federal district court re-asserting its takings claim. The district court raised the issue of ripeness *sua sponte* and concluded that Liberty Mutual's takings claim was still not ripe.[2] The district court reasoned that Liberty Mutual never met the second requirement for a ripe takings claim under *Williamson County* because Liberty Mutual failed to use available state procedures to seek compensation. And, the district court further reasoned,

*Id.* Because Liberty Mutual's claims, as articulated to this panel, hinge on the allegedly confiscatory effect created by the combination of the voluntary market rate and the involuntary market rate, we agree that Liberty Mutual's failure to utilize Louisiana statutory procedures for challenging the 1989 involuntary market rate puts its claim as to that year on the same footing as its claims regarding the other years in question.

[2] The district court had earlier granted the defendants' motion to dismiss or alternatively for summary judgment but never provided reasons for its decision. We remanded this case to the district court for the limited purpose of permitting that court to assign reasons for its decision. *Liberty Mutual Ins. Co. v. Brown*, No. 03-30558, 2004 U.S. App. LEXIS 1629 (5th Cir. Feb. 3, 2004). On remand, the district court raised the issue of ripeness *sua sponte*.

5

because Liberty Mutual has since allowed the statute of limitations on its state remedies to expire, Liberty Mutual permanently prevented the claim from ever ripening. The district court therefore dismissed Liberty Mutual's claims for lack of jurisdiction. Liberty Mutual timely appealed.

**ANALYSIS**

We review a district court's decision to dismiss for lack of jurisdiction *de novo*. *Vogt v. Bd. of Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). The defendants, of course, argue that the reasoning and the result reached by the district court are correct. Liberty Mutual conversely argues that its claim is ripe when properly analyzed under the *Williamson County* framework.

*Takings Claim Prerequisites*

As noted above, in *Williamson County* the Supreme Court held that a takings claim against a state was not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision," 472 U.S. at 186, and (2) the plaintiff "seek[s] compensation through the procedures the State has provided for doing so." *Id.* at 194. In *Williamson County*, the plaintiff owned property in Tennessee, and a regional planning commission disapproved of some of the plaintiff's development plans. 473 U.S. at 181. The plaintiff then filed suit in federal district court, alleging a taking without just compensation. *Id.* at 182. The

6

Supreme Court concluded that the claim was not ripe because (1) the plaintiff had not yet obtained a final decision from the commission by asking the commission for a variance from the applicable zoning requirements, *id.* at 187-88, and (2) the plaintiff did not seek compensation through the procedures provided by Tennessee. *Id.* at 194. The Supreme Court noted that the exhaustion of administrative remedies is generally not required before a section 1983 action may be pursued in federal court and clarified that its ripeness requirements for a takings claim were not contrary to that general rule, *id.* at 192, as discussed below.

*The Final Decision Requirement*

Under its analysis of the first ripeness requirement, obtaining a final decision from the governmental entity implementing the regulations, the *Williamson County* Court explained that this federal finality requirement did not require the plaintiff to exhaust administrative remedies by utilizing administrative and judicial procedures to review the adverse decision but only required the plaintiff to obtain a final answer from the initial decision-maker. *Id.* at 192-93. Thus, while a takings plaintiff must obtain a final decision from the decision-making entity and must avail itself of state procedures for obtaining compensation before the federal takings claim ripens (for instance, by filing an inverse condemnation lawsuit as required by the Supreme Court in *Williamson County*), the exhaustion of

7

administrative remedies at the state level is not an independent and separate requirement for a takings claim to be considered ripe under federal law.

Based on this principle, Liberty Mutual argues that it was not required to utilize the Louisiana statutory procedures providing for administrative and judicial review and that its claim is ripe. While, as the district court concluded, Liberty Mutual appears to have satisfied the final decision requirement, Liberty Mutual must also establish that it sought compensation through the procedures provided by Louisiana in order for its federal takings claim to be ripe.

*The Requirement that Adequate State Procedures for Obtaining Compensation be Utilized*

In this case Liberty Mutual's failure to avail itself of Louisiana's statutory procedures providing for administrative and judicial review prevented it from meeting the second *Williamson County* requirement. Again, according to *Williamson County*'s second ripeness prerequisite, the plaintiff must avail himself of procedures the state has provided for seeking compensation. 473 U.S. at 194. "[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195. The Court again distinguished Tennessee's procedures for review of the

8

commission's actions, which the Court did not require, from Tennessee's provision for inverse condemnation actions, which the Court noted that the plaintiff had not shown to be unavailable or inadequate. *Id.* at 196. Liberty Mutual thus argues that it was not required to utilize Louisiana's statutory procedures for administrative and judicial review. And, again, Liberty Mutual is correct that the exhaustion of state administrative remedies is not an independent federal law prerequisite to a federal takings claim.

Here, however, according to Louisiana state law, Liberty Mutual's decision to bypass Louisiana statutory procedures providing for administrative review and judicial review prevented Louisiana courts from examining the merits of Liberty Mutual's claim in an inverse condemnation action. The Louisiana First Circuit Court of Appeals found that no inverse condemnation cause of action could accrue to Liberty Mutual under Louisiana law because of Liberty Mutual's failure to pursue its statutory remedies of administrative and judicial review before filing suit, consistent with Louisiana's general rule requiring exhaustion of state administrative remedies.[3] *Id.* at 1253. As Liberty Mutual

---

[3] Liberty Mutual argues that Louisiana misconstrued *Williamson County* in determining that the inverse condemnation action was unripe for state court purposes. But a review of the Louisiana court's opinion reveals that it did not purport to directly apply *Williamson County*. Instead, the court was simply analogizing the Louisiana law requirement that the plaintiff avail itself of state statutory remedies before filing an inverse condemnation suit to *Williamson County*'s requirement that the plaintiff utilize state procedures for obtaining compensation

9

failed to present its inverse condemnation action to the state court in a posture such that the state court could rule on the merits of Liberty Mutual's claim, Liberty Mutual failed to utilize the available state procedures for obtaining compensation. *Cf. Pascoag Reservoir & Dam, L.L.C. v. Rhode Island*, 337 F.3d 87, 90-94 (1st Cir. 2003) (holding that Pascoag forfeited its federal takings claim by failing to timely state a cause of action in state court; Pascoag had alleged an inverse condemnation claim in state court, then voluntarily dismissed that claim, and the Rhode Island Supreme

---

before bringing a federal takings claim. 713 So.2d at 1254.

The court based its holding on the "general rule" of Louisiana law that "a person aggrieved by the action of a state agency must exhaust all administrative remedies before being entitled to judicial review." *Id.; accord Polk v. State, Department of Transportation and Development*, 538 So.2d 239, 250 (La. 1989)*.* The court explained this requirement by stating that "[t]he rationale behind this requirement is that matters of agency expertise should be first addressed by the administrative tribunals created by the legislature to address those issues." *Id.; see also Polk*, 538 So.2d at 250*.* Citing the Louisiana Supreme Court in *Polk*, 538 So.2d at 250, the court further explained: "Part of the function of the exhaustion doctrine is to give the agency whose decision is under attack an opportunity to review, supplement and, if necessary, correct its decision." 713 So.2d at 1254.

The court also pointed out that "Liberty Mutual took no action to present this issue for judicial review and therefore, the courts were not given the opportunity to modify or reverse the allegedly unreasonably low rates." *Id.* A review of the court's rationale for applying the Louisiana law requirement that Liberty Mutual utilize available state statutory procedures before filing suit reveals that the court's enforcement of this requirement was based on deference to the Louisiana legislature and the statutory procedure for judicial review. The court did not purport to apply a federal law requirement enunciated in *Williamson County* but instead simply cited that case based on the analogous "principles" considered in that case. 713 So.2d at 1254.

10

Court subsequently stated in dicta that the claim was time-barred); *Gamble v. Eau Claire County*, 5 F.3d 285, 286 (7ᵗʰ Cir. 1993) (holding that the plaintiff had forfeited her federal rights when she waited too long to file an inverse condemnation claim in state court and her state judicial review proceeding was dismissed for failure of service).

Any other rule would allow plaintiffs to circumvent state court by failing to comply with state procedural requirements for bringing inverse condemnation claims, thereby nullifying *Williamson County*'s requirement that the plaintiff avail itself of the available state procedures for obtaining compensation. *Cf. Pascoag*, 337 F.3d at 93 (concluding that if the failure to bring a state inverse condemnation claim could be excused simply because that claim was time-barred, the exception "would swallow the general rule of state remedy exhaustion"). Moreover, this does not conflict with the *Williamson County* Court's discussion of administrative exhaustion, as it does not impose a requirement of administrative exhaustion under federal law. If a plaintiff is able to have the merits of its claim considered in state court without first having to exhaust administrative remedies, then no administrative exhaustion is required for the takings claim to be considered ripe in federal court. Here, however, because Louisiana does require the potential plaintiff to utilize Louisiana's statutory provisions providing for administrative and judicial

11

review prior to bringing an inverse condemnation action in state court, Liberty Mutual was required to follow these procedures to comply with the second prong of the *Williamson County* test.

To excuse its failure to comply with *Williamson County*'s second requirement, Liberty Mutual must show that available state procedures were inadequate or unavailable at the time of the taking. *Williamson County*, 473 U.S. at 196-97. Liberty Mutual has not argued that the state procedures were inadequate or unavailable at the time of the taking. And the fact that Liberty Mutual's inverse condemnation claim is currently barred because of Liberty Mutual's failure to exhaust administrative remedies as required by Louisiana law does not mean that the state remedies were inadequate or unavailable at the time of the alleged taking. *Cf. Pascoag*, 337 F.3d at 93-94 (holding that Rhode Island's inverse condemnation action was not unavailable, inadequate, or futile at the time of the taking even though it was time-barred at the time the federal suit was brought).

By failing to utilize available state remedies for obtaining compensation, Liberty Mutual has prevented itself from meeting the second ripeness requirement of *Williamson County*. Further, because the three-year prescriptive period for an inverse condemnation action in Louisiana provided for by LA. REV. STAT. ANN. § 13:5111 (LEXIS 2004) has now expired, the district court was correct in concluding that Liberty Mutual has permanently prevented the claim

12

from ever ripening.  *See, e.g., Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2nd Cir. 2002) (holding that the plaintiff's federal takings claim was permanently unripe because it allowed the time for seeking a state remedy to pass).  The district court was thus correct that it had no jurisdiction, and its dismissal for lack of jurisdiction is AFFIRMED.

## CONCLUSION

Because Liberty Mutual did not avail itself of adequate state procedures for obtaining compensation, its federal takings claim is not ripe.  Because the time for bringing an inverse condemnation action in Louisiana state court has expired, Liberty Mutual's takings claim is permanently unripe.  The district court's dismissal for lack of jurisdiction is AFFIRMED.