# United States Court of Appeals
## For the First Circuit

Nos. 02-2179
     02-2233

PASCOAG RESERVOIR & DAM, LLC,
Plaintiff-Appellant/Cross-Appellee,

v.

THE STATE OF RHODE ISLAND, acting by and through
JAN REITSMA, in his capacity as Director of the
RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,
and SHELDON WHITEHOUSE, in his capacity as Attorney General
for the State of Rhode Island,
Defendants-Appellees/Cross-Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

Barry J. Kusinitz, for plaintiff-appellant/cross-appellee.
     Michael Rubin, Assistant Attorney General, with whom Sheldon
Whitehouse, Attorney General, James R. Lee, Assistant Attorney
General Div. Chief for the State of Rhode Island, Claire Richards,
Deputy Executive Counsel, and Mary Kay, Deputy Chief Legal Counsel,
for the Rhode Island Department of Environmental Management, were
on brief, for defendants-appellees/cross-appellants.

July 28, 2003

**TORRUELLA**, **Circuit Judge**. Rhode Island, through its Department of Environmental Management, acquired an area of land in the Pascoag Reservoir ("Reservoir" or "Lake") by adverse possession and obtained a prescriptive easement on behalf of the public to use the Reservoir for recreational activities. In this inverse condemnation suit,[1] Pascoag Reservoir & Dam, LLC ("Pascoag"), the Reservoir's owner, seeks compensation for that acquisition.

The district court dismissed the case for failure to state a claim. Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F. Supp. 2d 206, 229 (D.R.I. 2002) (hereinafter "Pascoag Federal Decision"). The court found that, as a general rule, the government must compensate for a taking made by adverse possession or prescription, but Pascoag may not recover in this case either because the statute of limitations began to run in 1975, when the state acquired its property rights, or because the doctrine of laches bars recovery. Id. at 226-29. The court then dismissed Pascoag's state law claims. Id. at 229.

The state appeals the first finding, asserting that adverse possession and prescription do not constitute a taking of property under the Constitution. Pascoag appeals the dismissal of

_____

[1] Inverse condemnation is "'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" United States v. Clarke, 445 U.S. 253, 257 (1980) (quoting D. Hagman, Urban Planning and Land Development Control Law 328 (1971)).

-2-

its claim, arguing that the statute of limitations did not begin to run until the recent judicial determination that the state had acquired property rights in the Reservoir.

We agree with the district court that Pascoag failed to state a viable claim.  Because Pascoag failed to timely pursue its state remedies, it forfeited its federal claim.  Following the "fundamental rule of judicial restraint," we do not reach the constitutional question of whether compensation is due when the state acquires land by adverse possession or prescription.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 62 (Ginsburg, J., concurring in part and concurring in the judgment) (quotation omitted); see also Kelly v. Marcantonio, 187 F.3d 192, 197 (1st Cir. 1999) (declaring "courts should not reach constitutional questions in advance of the necessity of deciding them").

## I.  Facts

Located in the towns of Burrillville and Glocester, Rhode Island, the Reservoir (also known as Echo Lake) is more than two miles long and has more than ten miles of shoreline.  Pascoag's predecessor in title created the Lake in 1860; Pascoag has owned the Reservoir since 1983.  In 1964, the state purchased a lot abutting the Reservoir and constructed a public boat ramp the following year.

Until at least 1997, "members of the public could . . . use the ramp as a point of access to the lake for various

-3-

recreational activities, including boating and fishing." Reitsma
v. Pascoag Reservoir & Dam, LLC, 774 A.2d 826, 829 (R.I. 2001)
(hereinafter "Pascoag State Decision").  The Reservoir was enjoyed
by "innumerable members of the public and other lakeside property
owners."  Id.  In 1997, Pascoag sought to limit the public's use by
placing a "NO TRESPASSING" sign near the water.  Id.

In 1998, the state brought suit in state court asserting,
among other things, that it had acquired property rights in the
Reservoir.   Pascoag cross-claimed, alleging that the state's
actions constituted a taking without just compensation, but the
state courts did not decide the taking issue because Pascoag later
voluntarily dismissed its inverse condemnation claim.  In 2001, the
Rhode Island Supreme Court held that the state had acquired by
adverse possession a small portion of the Lake bottom (occupied by
the boat ramp) and had acquired, on the public's behalf, a
prescriptive easement to use the boat ramp to access the entire
Lake for recreational purposes.  Id. at 834.  The court held "that
the state had begun to use the Reservoir property in 1965 and,
under the Rhode Island ten year adverse possession statute, had
acquired title to a portion of the Reservoir plus an easement in
1975."  Pascoag Federal Decision, 217 F. Supp. 2d at 211 (citing
Pascoag State Decision, 774 A.2d at 838).  The issue in the state
case was whether the state acquired land rights by adverse

-4-

possession and prescription; the Rhode Island Supreme Court held that it did.  Pascoag State Decision, 774 A.2d at 834.

Pascoag filed this complaint in federal court in October 2001, alleging that the state violated the Takings Clause of the Fifth and Fourteenth Amendments and asserting related state law claims.  The district court, treating the claim as one arising under 42 U.S.C. § 1983, dismissed the suit, and this appeal followed.

## II.  Standard of Review

We review de novo the district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).  We accept the complaint's allegations as true and make all reasonable inferences in favor of the plaintiff.  Id.  We will affirm the dismissal only if Pascoag cannot prove any facts entitling it to relief.  Id.

## III.  Discussion

### A.  Prerequisites to a Takings Claim

In Williamson County Regional Planning Commission v. Hamilton Bank, the Supreme Court outlined two prerequisites to a federal suit alleging a Fifth Amendment taking of a property interest.  473 U.S. 172, 186, 194-95 (1985).  A federal suit is not timely until a plaintiff demonstrates that (a) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the

-5-

property at issue," (the "final decision requirement") and (b) the plaintiff sought (and was denied) just compensation by means of an adequate state procedure (the "state action requirement").[2] Id. at 186, 194-95. Williamson County stands "for the proposition that there is no uncompensated taking -- that is, nothing to litigate under § 1983 -- until the state has established (a) what it has taken, and (b) its refusal to pay 'just compensation.'" SGB Fin. Servs., Inc. v. Consol. City of Indianapolis-Marion County, Ind., 235 F.3d 1036, 1038 (7th Cir. 2000).

Although Williamson County was a regulatory taking case, a modified verison of its timeliness analysis applies to physical taking cases. Daniel v. County of Santa Barbara, 288 F.3d 375, 382 (9th Cir. 2002). The present case concerns a potential physical taking, based on the intrusion onto Pascoag's property or the acquisition of rights in that property.[3] In a physical taking case, the final decision requirement is relieved or assumed because "[w]here there has been a physical invasion, the taking occurs at once, and nothing the [governmental actor] can do or say after that point will change that fact." Hall v. City of Santa Barbara, 833

---

[2] This case does not raise the issue of whether the Williamson County requirements apply when a litigant alleges that the state has taken property for a purely private use. See Daniels v. Area Plan Comm'n, 306 F.3d 445, 453 & n.6 (7th Cir. 2002) (identifying circuit split and citing cases).

[3] Both the fee simple in the Lake bottom and the easement on behalf of the public are permanent physical occupations. See Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 832 (1987).

F.2d 1270, 1281 n.28 (9th Cir. 1987); cf. Arnett v. Myers, 281 F.3d 552, 563 (6th Cir. 2002) (finding final decision requirement satisfied because decision maker "arrived at a definitive position inflicting an actual, concrete injury when its agents removed and destroyed" plaintiff's alleged property); Forseth v. Village of Sussex, 199 F.3d 363, 372 n.12 (7th Cir. 2000) (finding physical taking claim subject only to Williamson County's state action requirement).  However, the state action requirement remains in physical taking cases: "[C]ompensation must first be sought from the state if adequate procedures are available."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1402 (9th Cir. 1989), overruled on other grounds by Armendariz v. Penman, 75 F.3d 1311, 1326 (9th Cir. 1996) (en banc).

### B.  State Action Requirement

Here, if Rhode Island "provides an adequate process for obtaining compensation, and resort to that process holds out some realistic promise of yielding just compensation," Pascoag may not seek compensation in federal court for an alleged taking without first resorting to the state process.  Gilbert v. City of Cambridge, 932 F.2d 51, 63 (1st Cir. 1991); accord Williamson County, 473 U.S. at 195 ("[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.").  "'[B]ecause

-7-

the Fifth Amendment[4] proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied.'" Gilbert, 932 F.2d at 63 (quoting Williamson County, 473 U.S. at 194 n.13); accord Gamble v. Eau Claire County, 5 F.3d 285, 286 (7th Cir. 1993) (stating that a litigant must "exhaust[] his remedies for obtaining a compensation award or equivalent relief from the state" because "the right protected by the duty of just compensation is not to the land or its use but merely to the market value of what is taken"). Thus, "the state's action . . . is not 'complete' until the state fails to provide adequate compensation for the taking." Williamson County, 473 U.S. at 195.

Pascoag did not seek compensation through the state court. Pascoag's burden is to show that one of the narrow exceptions to the state action requirement applies. The Supreme Court in Williamson County identified two exceptions -- where state remedies were "unavailable" or "inadequate." 473 U.S. at 196-97; accord Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002); Gilbert, 932 F.2d at 65. Some courts have also recognized an exception where state remedies are "futile." See, e.g., Daniels, 306 F.3d at 456.

---

[4] The Fifth Amendment provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. It applies to the states through the Fourteenth Amendment. MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 342 n.1 (1986).

### 1.  Availability of adequate state remedies

First, we consider whether adequate state remedies were available to Pascoag.  Courts have made exceptions to <u>Williamson County</u>'s state action requirement when state law did not recognize the taking that occurred, or did not permit the relief required to make the plaintiff whole.  <u>See</u>, <u>e.g.</u>, <u>Daniels</u>, 306 F.3d at 456-57 (finding an exception to the state action requirement because plaintiffs did not have a "definable pecuniary loss" and state inverse condemnation proceedings were limited to monetary damages); <u>Hall</u>, 833 F.2d at 1281 n.28 (finding a state court process inadequate because at the time, no action for inverse condemnation based on a regulatory taking could be brought under California law); <u>see also</u> <u>Suitum</u> v. <u>Tahoe Reg'l Planning Agency</u>, 520 U.S. 725, 734 n.8 (1997) ("Ordinarily, a plaintiff must seek compensation through state inverse condemnation proceedings before initiating a takings suit in federal court, unless the state does not provide adequate remedies for obtaining compensation.").

Pascoag cannot show that Rhode Island's remedies were inadequate or unavailable.  The Rhode Island Constitution prohibits the taking of private property for public use without just compensation and Rhode Island state courts have long allowed recovery through suits for inverse condemnation.  <u>Annicelli</u> v. <u>Town of South Kingstown</u>, 463 A.2d 133, 139 (R.I. 1983); <u>E & J Inc.</u> v. <u>Redevelopment Agency of Woonsocket</u>, 405 A.2d 1187, 1189 (R.I.

1979) ("Governmental action short of actual acquisition of property may be a constructive taking or an inverse condemnation . . . ."); cf. Caldarone v. Rhode Island, 199 A.2d 303, 304 (R.I. 1964) (assessing damages for land taken by state); see also Harris v. Mo. Conservation Comm'n, 790 F.2d 678, 680-81 (8th Cir. 1986) (finding constitutional provision provided adequate remedy).  Thus, Rhode Island has an adequate process available to address Pascoag's suit for just compensation.

### 2.  Futility of pursuing state remedies[5]

In its decision regarding the property rights of the state and Pascoag, the Rhode Island Supreme Court discussed Pascoag's potential takings claims in dicta:

> [E]ven if the state's conduct from 1965 to 1975 had been unlawful and amounted to an improper taking of the lake owner's property without paying just compensation, and even if the lake owner's property had not been taken in the constitutional sense until the prescriptive period ended in 1975 - issues that we have no need to decide in this case - the corporation and its predecessors failed to assert any takings claim in a timely manner. Thus, they are barred from asserting them now under any statute of limitations that possibly could apply to such claims . . . .

---

[5]  We recognized a futility exception to Williamson County's final decision requirement where "the granting authority has dug in its heels and made it transparently clear that the permit, application or no, will not be forthcoming." Gilbert, 932 F.2d at 61 (citation omitted).  A futility exception to the state action requirement would exist under similar circumstances.

<u>Pascoag State Decision</u>, 774 A.2d at 838. Pascoag argues that because this language suggests that Pascoag's claim is time-barred, state court remedies are futile.

Again, Pascoag fails to carry its burden to show that an exception to the state action requirement applies. Pascoag's futility argument is simply that it is now time-barred from making state law claims. If the futility rule were read this broadly it would swallow the general rule of state remedy exhaustion. Like the other exceptions, the futility exception must consider the landowner's available state remedies at the time of the taking. See <u>Williamson County</u>, 473 U.S. at 194 ("[A]ll that is required [by the Fifth Amendment] is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking.") (quotation omitted). There is no evidence that the state would not have been receptive to Pascoag's claim had it been brought at the time the property was taken (regardless of whether that was in 1965 or 1975 -- a determination we address below). Pascoag offers no compelling explanation for not using state

procedures earlier,[6] and we find that state court remedies are not futile.

### C. Consequences of Failure to Bring a Timely State Claim

Pascoag did not satisfy the <u>Williamson County</u> prerequisites for a federal claim. We have stated that takings claims are "unripe until the potential state remedy has been more fully pursued."[7] <u>Gilbert</u>, 932 F.2d at 65. The situation here is different. As the Rhode Island Supreme Court noted, there is a fatal flaw in Pascoag's claim: it is too late for any state law cause of action. <u>Williamson County</u> requires the pursuit of state

---

[6] Because Pascoag's federal claim has been forfeited, we need not address the issue of whether Pascoag, who became the owner of the Reservoir in 1983, has a right to compensation. See <u>Palazzolo</u> v. <u>Rhode Island</u>, 533 U.S. 606, 628 (2001) (noting that in a physical taking case, "it is a general rule of the law of eminent domain that any award goes to the owner at the time of the taking, and that the right to compensation is not passed to a subsequent purchaser.").

[7] The term "ripe" is confusing because, as explained infra, a plaintiff is <u>barred</u> from bringing federal suit in a situation such as Pascoag's, where the state statute of limitations has run. Ripeness terminology suggests that a claim will later be available to the plaintiff; such language has been avoided in some recent cases. See <u>City of Monterey</u> v. <u>Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687, 721 (1999) ("A federal court, moreover, cannot entertain a takings claim under § 1983 unless or until the complaining landowner has been denied an adequate postdeprivation remedy."); <u>Harbours Pointe of Nashotah, LLC</u> v. <u>Village of Nashotah</u>, 278 F.3d 701, 704 (7th Cir. 2002) (noting that a plaintiff "cannot state a claim under federal law until he has used those [state] procedures and been denied compensation."); <u>but see</u> <u>Palazzolo</u>, 533 U.S. at 618 (using "ripeness" to explain <u>Williamson County</u>'s requirements in the regulatory taking context). We, too, avoid terms of ripeness because the <u>Williamson County</u> requirements may reveal the claim to be either unripe (too early) or overripe (too late).

remedies before a taking case is heard in federal court.  Adequate state remedies were available to Pascoag; it simply ignored those remedies until it was too late.  By failing to bring a timely state cause of action, Pascoag forfeited its federal claim.

We assume for purposes of this appeal that a taking claim may arise when the government acquires property rights by adverse possession or prescription.  Reviewing the dates as determined by the Rhode Island Supreme Court, the state and the public began using the land and water in a manner that was open, actual, notorious, hostile, adverse, continuous, and under a claim of right in 1965.  Pascoag State Decision, 774 A.2d at 834.  Property rights were acquired by the state and the public in 1975.  Id. at 838.  The state court decision was issued in 2001.

Relying on United States v. Dickinson, 331 U.S. 745 (1947), Pascoag argues that the circumstances surrounding the taking had not "stabilized" until the Rhode Island Supreme Court's final decision, and the statute of limitations did not begin to run until that time.  See id. at 749.  We find Dickinson distinguishable.  There, the government caused plaintiff's land to be flooded, and the water level rose over a period of years.  Id. at 747.  The government did not use condemnation proceedings, but "left the taking to physical events."  Id. at 748.  The Court held that the statute of limitations did not begin to run when flooding commenced, but only when physical events stabilized, Id. at 749.

-13-

This ensured that damages could be ascertained and that res judicata would not bar recovery for future damage. Id.

While Pascoag points to facts suggesting that the situation regarding ownership of the Reservoir was not certain as late as 1997, the State Supreme Court found that the State's use satisfied all the adverse possession requirements by 1975. At that time a final account could be struck, and nothing in the State's use of the Lake changed over time, so piecemeal litigation would not result. There was continuous occupancy by the State for ten years at which point property rights were acquired by operation of law and, if compensable, must be countered by a state court suit within the period allowed by the state statute of limitations.

Pascoag also asserts that its claim was not ripe until the decision of the Rhode Island Supreme Court. We disagree. First, Pascoag's argument is at odds with the state court's finding of adverse possession and prescription, which is binding on Pascoag and requires open and notorious possession by the adverse party. That determination means, assuming arguendo that a taking claim could be made for acquisition by adverse possession or prescription, Pascoag should have known that a taking was in progress and brought suit under state law at that time (within the relevant statute of limitations).[8] The statute of limitations for

---

[8] What remedies did Pascoag have available to it? From 1965 to 1975, before adverse possession and prescription transferred title, Pascoag could have brought a suit to evict the state from the land

-14-

a state taking claim is, at most, 10 years (for "all civil actions not otherwise limited"), and likely 1 year (for "assessment of damages in state condemnation proceedings"). R.I. Gen. Laws § 9-1-36 (2002). Pascoag's claim was ripe under state law at least by 1975, when Pascoag, assuming it had any claim at all, could have brought suit for recovery in state proceedings. If it had done so and the state had denied a remedy in violation of the Constitution, then a § 1983 claim would have ripened at the time of the denial. To its detriment, Pascoag did not file suit, but instead waited until the state sought judicial remedies in 1998.

Second, while the <u>Williamson County</u> requirements typically reveal a claim to be premature, they may also reveal that a claim is barred from the federal forum. <u>See</u> <u>Vandor, Inc.</u> v. <u>Militello</u>, 301 F.3d 37, 39 (2d Cir. 2002); <u>Harbours Pointe</u>, 278 F.3d at 706; <u>Gamble</u>, 5 F.3d at 286; <u>Harris</u>, 790 F.2d at 681. The <u>Williamson County</u> "ripeness" requirements will never be met in this case, because the state statute of limitations has run on Pascoag's inverse condemnation claim. By failing to bring its state claim within the statute of limitations period, Pascoag <u>forfeited</u> its federal claim. <u>Gamble</u>, 5 F.3d at 286; <u>accord</u> <u>Vandor</u>, 301 F.3d at 39. "The state provided a remedy, but plaintiff[] failed to pursue

or, alternatively, should have demanded that the state agree in writing that occupancy was not intended to be adverse but was by temporary and revocable permission. This may seem harsh but adverse possession law puts this burden on all landowners as to all occupants.

it.  [It] cannot obtain jurisdiction in the federal courts simply by waiting until the statute of limitation bars the state remedies."  Harris, 790 F.2d at 681.

In Gamble, the plaintiff filed suit in federal court alleging that she had been denied just compensation by a zoning plan.  Gamble, 5 F.3d at 285.  The Seventh Circuit, citing Williamson County, asked whether she had exhausted her remedies "for obtaining a compensation award or equivalent relief from the state."  Id. at 286.  Among the options available to the plaintiff under state law was the ability to bring an inverse condemnation suit.  Id.  However, the statute of limitations barred plaintiff from raising that issue in the state courts.  Id.  Analogizing to other situations where exhaustion of remedies is required, the court held that the failure to pursue state compensation remedies in a timely fashion forfeited plaintiff's federal claim to just compensation.  Id.

Similarly, Pascoag's failure to bring a timely suit for compensation under state law has led to the forfeiture of its federal taking claim.  Even making all reasonable inferences in favor of Pascoag -- that a taking claim can stand when the state acquires land by adverse possession, that the claim did not accrue until the state assumed property rights in 1975, and that the Rhode Island statute of limitations for such a claim is 10 years -- Pascoag's state claim was time-barred in 1985.  "[A] claimant

-16-

cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open." Id. Pascoag's failure to assert a timely state claim has foreclosed its federal cause of action. "Litigants who neglect or disdain their state remedies are out of court, period." River Park, Inc. v. City of Highland Park, 23 F.3d 164, 165 (7th Cir. 1994).

### IV.  Conclusion

To sum up, a taking by adverse possession occurred, on Pascoag's own theory, in 1975 after a ten-year period of government occupancy or use.  At that point, Pascoag had an obligation to bring a suit in state court for compensation within the limitations period unless the state remedy was plainly futile (which in this case it was not); and by failing to do so it forfeited any federal claim that state processes were inadequate.  Of course, the situation in 1975 may well have been unclear from a legal standpoint, but for that, Pascoag's remedy was to bring a lawsuit within the statutory period.  The question of whether or not the state must pay when it takes land by adverse possession or prescription will have to wait for another day.  Because Pascoag failed to bring a timely claim in state court, it forfeited its federal takings claim.  The district court's decision is affirmed.

**<u>Affirmed</u>**.