# United States Court of Appeals
## For the First Circuit

No. 10-1484

DOWNING/SALT POND PARTNERS, L.P.,

Plaintiff, Appellant,

v.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

William R. Landry, with whom Karen Pelczarski and Blish & Cavanagh LLP were on brief, for appellant.
Michael Rubin, Assistant Attorney General, with whom Patrick C. Lynch, Attorney General, was on brief, for appellees.
Brian A. Goldman on brief for appellee Coastal Resources Management Council.
J. David Breemer on brief for amicus curiae Pacific Legal Foundation.

May 23, 2011

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH**, **Chief Judge**. Downing/Salt Pond Partners, L.P., frustrated by two state agencies' restrictions on its development of a coastal residential subdivision in Narragansett, Rhode Island, appeals the district court's dismissal of its federal takings claims under the Supreme Court's ripeness requirements for such claims, set forth in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).

Downing argues that it is excused from one Williamson County requirement, that it pursue any "adequate procedure for seeking just compensation" that state law provides, id. at 195, under a decision of this court. It argues it is excused from the other Williamson County ripeness requirement, that the relevant government agency has reached a "final decision regarding the application of the regulations to the property at issue," id. at 186, because the state agency has not yet entered a final decision despite Downing's repeated requests that it do so. We affirm the dismissal of the complaint, reaching only the first issue. We hold again that Rhode Island's inverse condemnation procedure satisfies the Williamson County requirements and must be followed. See Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87, 93 (1st Cir. 2003).

## I. Standard of Review

We review de novo the legal question of whether the district court properly dismissed Downing's complaint as unripe for

lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Deniz v. Municipality of Guaynabo, 285 F.3d 142, 144 (1st Cir. 2002). We accept the well-plead factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. Id. In resolving a Rule 12(b)(1) motion, we may also consider other materials in the district court record, including where those materials contradict the allegations in the complaint. Aquilar v. U.S. Immigration & Customs Enforcement, 510 F.3d 1, 8 (1st Cir. 2007); Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

## II. Factual Background

### A. Facts as Alleged in the Complaint

In 1992, Downing secured a land use permit, called an Assent, from the Rhode Island Coastal Resources Management Council (CRMC), in order to develop a residential community on a tract of land it owns in Narragansett. Between 1992 and 2007 Downing built homes on twenty-six of the planned seventy-nine lots in the subdivision, installed community infrastructure such as roads and a sewer line, and began infrastructure improvements necessary to build on the remaining lots. While Downing failed to attach a copy of the Assent to its complaint, Downing alleged that none of the Assent's thirty-four stipulations and conditions required it to perform any archaeological or historical surveys on the tract of land.

In 2007, a second state agency, the Rhode Island Historic Preservation and Heritage Commission (HPHC) "became keenly interested in the site of the Salt Pond Residences project from a cultural and archaeological perspective." This was because many artifacts had been found in the course of the Salt Pond development project indicating that the land was likely a former Narragansett Indian settlement. These artifacts included digging and grinding tools, fragments of ceramic and stone vessels and a pipe, and projectile points. Downing alleges the HPHC then "concluded that [the land] should be preserved for the benefit of the public at large and not developed at all," and encouraged the CRMC to withdraw the project's CRMC Assent. A July 11, 2007 letter from the HPHC Executive Director to the CRMC, Downing alleges, stated that HPHC "was resolved 'to acquire title to the [site] in order to assure its preservation'" (alteration in Complaint).

The CRMC sent Downing a letter dated August 22, 2007 stating that the Assent "is still valid and remains valid pending a determination by the [CRMC] on the issues raised by the Historic Preservation And Heritage Commission" (alteration in Complaint). In a June 2008 HPHC memorandum,[1] Downing alleges, the HPHC confirmed that it had recommended to the CRMC that either construction be prohibited or a "complete archaeological data

---

[1] The Complaint does not state whether the memorandum was addressed to the CRMC or to Downing.

-4-

recovery" project be required as a condition of further construction. Downing estimates that such a data recovery project would cost six million dollars.

Downing alleges that a year after the initial CRMC letter, on August 21, 2008, following a series of informal discussions with the HPHC that did not resolve the dispute, it formally requested that the CRMC submit the matter for hearing. On December 17, 2008 it submitted to the CRMC a legal opinion memorandum and supporting materials from its lawyers arguing that the CRMC and HPHC were violating the United States and Rhode Island Constitutions' takings clauses.

On February 23, 2009, Downing formally notified the HPHC that it would resume construction under its permits absent some response from the agencies. There is no evidence in the record as to whether further communications took place during the months after this February 23 notice.

Downing alleges that neither agency ever responded to any of these communications. The defendants deny that they were nonresponsive, asserting to us as they did to the district court that during the two-year period at issue, informal negotiations were ongoing between the parties to try to resolve the issue.

On June 27, 2009, Downing resumed construction. The same day, the CRMC issued a cease and desist order. Downing did not place the order into the district court record, and has not

described its contents except to claim that the order did not specify how Downing's conduct violated its permits. On July 15, 2009, Downing formally requested a hearing before the CRMC in order to contest the cease and desist order. Downing alleges that it had heard no response by the CRMC to this request by August 6, 2009. On this day, Downing says, it then sent a "final notice" to the CRMC warning that if the CRMC did not promptly respond, Downing would conclude that its pursuit of administrative remedies was futile and would "proceed accordingly."

Downing alleges that the CRMC did not respond to this final notice, though Downing did not wait long for it to do so. Less than three weeks later, on August 24, 2009, Downing filed its complaint in federal court alleging, inter alia,[2] that the state, CRMC, and HPHC had taken its property for public purposes without just compensation, and denied it substantive and procedural due process and equal protection under the law. Downing sought damages and prospective injunctive relief.

On December 30, 2009, the CRMC issued to Downing a notice of hearing on the issues surrounding Downing's Assent. The district court noted in its March 26, 2010 opinion that in February 2010 the parties had "agreed that the matter would be referred to

---

[2]    Downing also alleged under federal law that the agencies had conspired to violate Downing's civil rights. Under Rhode Island law, Downing also alleged that the agencies had intentionally interfered with its advantageous business relations.

a CRMC subcommittee for an expedited hearing." <u>Downing/Salt Pond Partners, L.P.</u> v. <u>Rhode Island</u>, 698 F. Supp. 2d 278, 279 & n.1 (D.R.I. 2010).  At oral argument in this court, counsel for Downing explained that this hearing process was ongoing.[3]

B. <u>Motion to Dismiss in the District Court</u>

Rhode Island moved to dismiss for lack of subject matter jurisdiction, arguing that Downing had failed to meet either of the <u>Williamson County</u> ripeness requirements for federal Takings Clause claims, and that its other claims were coextensive with the takings claims and should be subject to the same requirements.  Downing responded that it was excused from both requirements.  As to the requirement that it seek compensation in state court, Downing argued that Rhode Island provided no "reasonable, certain and adequate" procedures "for obtaining compensation."  <u>Williamson County</u>, 473 U.S. at 194 (quoting <u>Reg'l Rail Reorg. Act Cases</u>, 419 U.S. 102, 124-25 (1974)) (internal quotation marks omitted).  This argument was based on language in an opinion in a case under Puerto Rico law that distinguished between "general remedial cause[s] of action under state law" and "procedures specifically designed by the state" to provide compensation for takings.  <u>Asociación De Subscripción Conjunta Del Seguro De Resonsabilidad Obligatorio</u> v.

---

[3]    According to Downing's counsel, the CRMC subcommittee had conducted four or five hearings over several months.  That stage of the process had concluded.  The parties had still to submit closing written submissions, after which the subcommittee would make a recommendation to the full CRMC.

Flores Galarza, 484 F.3d 1, 17 (1st Cir. 2007). Downing argued this language overruled an earlier decision of this court, Pascoag, which affirmed a dismissal under Williamson County for failure to use Rhode Island's inverse condemnation procedure. See Pascoag, 337 F.3d at 92-93. Downing also argued that the finality requirement was inapplicable to "direct or physical takings such as are alleged here," and in the alternative that further administrative proceedings would be futile. Downing did not respond to Rhode Island's argument that its non-takings claims should be dismissed along with its takings claims and did not assert that those claims were not also subject to the ripeness constraints.

The district court, in a thoughtful and well-reasoned opinion, granted the motion to dismiss all of Downing's state and federal claims. Downing/Salt Pond Partners, 698 F. Supp. 2d 278. The court found Downing's argument that it was excused from the state litigation requirement to be foreclosed by binding First Circuit precedent holding that Rhode Island's procedures were available and adequate under the Williamson County ripeness test. Downing, 698 F.Supp.2d at 284 (citing Pascoag). The court rejected Downing's argument that Flores Galarza implicitly overruled Pascoag. Id. As to Downing's remaining claims, including its federal due process claims, the court found that "Downing has merely '[d]ress[ed] a takings claim' in several other costumes,"

and concluded that all of the claims failed on ripeness grounds under <u>Williamson County</u> as well. <u>Id.</u> at 290 (quoting <u>Deniz</u>, 285 F.3d at 149) (alteration in original). Downing appeals the dismissal of its claims.

III. <u>Analysis of the Williamson County Ripeness Prongs</u>

A. <u>Takings Claim Ripeness Requirements</u>

In <u>Williamson County</u>, the Supreme Court held that the nature of a federal regulatory takings claim gives rise to two ripeness requirements which plaintiffs bear the burden of proving they have met before a federal court has jurisdiction over a takings claim. <u>Williamson County</u>, 473 U.S. at 186; <u>García-Rubiera</u> v. <u>Calderón</u>, 570 F.3d 443, 521 (1st Cir. 2009) ("Plaintiffs have the burden of demonstrating ripeness."). These two requirements arise because "there is no uncompensated taking," and therefore nothing to litigate in federal court, "until the state has established (a) what it has taken, and (b) its refusal to pay 'just compensation.'" <u>Pascoag</u>, 337 F.3d at 91 (quoting <u>SGB Fin. Servs., Inc.</u> v. <u>Consol. City of Indianapolis-Marion Cnty., Inc.</u>, 235 F.3d 1036, 1038 (7th Cir. 2000)). Downing argues it is exempt from both requirements. We discuss each in turn.

First, a regulatory takings claim is not ripe until the relevant government entity has "reached a final decision regarding the application of the regulations to the property at issue." <u>Williamson County</u>, 473 U.S. at 186. Determining whether regulatory

action has resulted in a taking involves a complex inquiry into facts that "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding" its application of the law to the land in question. Id. at 191; see also Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001). Generally plaintiffs must complete ordinary administrative processes before the impact of regulatory restrictions can be determined with reasonable certainty. Palazzolo, 533 U.S. at 621.

The second ripeness requirement, which is the focus of our analysis, arises because the Fifth Amendment "does not proscribe the taking of property; it proscribes taking without just compensation." Williamson County, 473 U.S. at 194. As a result, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195. This is sometimes referred to as a "state litigation" requirement.[4] See San Remo Hotel, L.P. v. City & Cnty. of San Francisco, 545 U.S. 323, 349 (2005) (Rehnquist, C.J., concurring). Further, the compensation need not be paid in advance or at the time of the taking, as long as there is a procedure in place at the time of the taking that is

---

[4] In adopting this "state litigation" terminology we do not mean to suggest that the requirement would not encompass a non-judicial state procedure that was otherwise adequate and available under Williamson County.

"reasonable, certain and adequate . . . for obtaining compensation." Williamson County, 473 U.S. at 194 (quoting Reg'l Rail Reorg. Act Cases, 419 U.S. at 124-25) (internal quotation marks omitted). In Williamson County itself, at the time of the alleged taking an inverse condemnation cause of action was available under state law, and the state courts had permitted its invocation in cases of regulatory takings as well as physical takings. Id. at 196. Because the plaintiff in Williamson had neither pursued an inverse condemnation proceeding nor shown that it was "unavailable or inadequate," its claim was unripe. Id. at 196-97.

Under the Williamson County ripeness rules a plaintiff might be precluded from ever bringing a takings claim in federal court if the substance of the federal claim is litigated in state court. The Supreme Court squarely confronted this situation in San Remo Hotel, in which it acknowledged this implication of Williamson County and refused to create an exception from ordinary preclusion rules and the full faith and credit statute, 28 U.S.C. § 1738, whenever "a case is forced into state court by the ripeness rule of Williamson County." San Remo Hotel, 545 U.S. at 342. The Court held that there was no absolute "right to vindicate . . . federal claims in a federal forum . . . . even when the plaintiff would have preferred not to litigate in state court, but was required to

-11-

do so by statute or prudential rules" like the <u>Williamson County</u> requirements.[5]  <u>Id.</u>

The Supreme Court has continued to adhere to the <u>Williamson County</u> state litigation rule, despite Chief Justice Rehnquists's concurrence in <u>San Remo Hotel</u> encouraging the Court to reconsider the rule.[6]  In <u>San Remo Hotel</u> itself, twenty years after <u>Williamson County</u>, the Court expressly refused to soften the effects of the rule on takings plaintiffs' access to the federal courts.  <u>See</u> <u>id.</u> at 341-42.  Since <u>San Remo Hotel</u>, the Court has repeatedly denied petitions for a writ of certiorari that asked the Court to abrogate the <u>Williamson County</u> state litigation rule.[7]

---

[5]  As a practical matter, the Court emphasized, because the finality requirement was actually "settled well before <u>Williamson County</u>," regulatory takings were already rarely litigated in federal court.  <u>San Remo Hotel, L.P.</u> v. <u>City & Cnty. of San Francisco</u>, 545 U.S. 323, 346-47 (2005).  This was not concerning: "State courts are fully competent to adjudicate constitutional challenges to local land-use decisions" and "undoubtedly have more experience than federal courts do in resolving the complex factual, technical, and legal questions" they raise.  <u>Id.</u> at 347.

[6]  Chief Justice Rehnquist explained that since joining the <u>Williamson County</u> majority, he had come to think that "the justifications for [the] state-litigation requirement are suspect, while its impact on takings plaintiffs is dramatic" in that they are often entirely precluded from a federal forum for their federal takings claims.  <u>Id.</u> at 352.  He acknowledged that no party or court had addressed the requirement's validity in <u>San Remo Hotel</u>, but he invited the Court to reconsider in an appropriate case in the future.  <u>Id.</u>

[7]  <u>See</u> <u>also</u> <u>Stop the Beach Renourishment, Inc.</u> v. <u>Fla. Dept. of Envtl. Prot.</u>, 130 S. Ct. 2592, 2618 (2010) (Kennedy, J., concurring in part and concurring in the judgment) (recognizing that "[u]ntil <u>Williamson County</u> is reconsidered, litigants will

-12-

See, e.g., Agripost, LLC v. Miami-Dade Cnty., Fla., 129 S. Ct. 1668 (2009); Petition for Writ of Certiorari at i, Agripost, LLC, No. 08-567 (Oct. 27, 2008), 2008 WL 4757424; Howard v. City of Marion, Ind., 547 U.S. 1179 (2006); Petition for Writ of Certiorari at i, Howard, No. 05-1274 (Mar. 31, 2006), 2006 WL 895847. Williamson County, then, governs our analysis.

This court has held, under Williamson County, that a takings claim against the state of Rhode Island was unripe where, as here, the plaintiff had failed to pursue the state's inverse condemnation cause of action. Pascoag, 337 F.3d 87. In Pascoag, the plaintiff owned a lake abutted by state-owned land. In 1964, the state built a public boat ramp jutting into the lake, which the public used as a point of access to the lake until at least 1997, when Pascoag put up a "NO TRESPASSING" sign. Id. at 90. Rhode Island won a judgment in the Rhode Island Supreme Court that it had "acquired by adverse possession a small portion of the Lake bottom (occupied by the boat ramp) and had acquired, on the public's behalf, a prescriptive easement to use the boat ramp to access the entire Lake for recreational purposes." Id. Pascoag then brought an inverse condemnation action against Rhode Island in federal court. Id. at 89.

---

have to press most of their judicial takings claims before state courts, which are 'presumptively competent . . . to adjudicate claims arising under the laws of the United States'" (quoting Tafflin v. Levitt, 493 U.S. 455, 458 (1990))).

Without deciding "whether compensation is due when the state acquires land by adverse possession or prescription," id. at 90, this court held that Pascoag had failed to show that Rhode Island state remedies are "unavailable" or "inadequate," Williamson County, 473 U.S. at 196-97, the "narrow" exceptions to the state litigation requirement, Pascoag, 337 F.3d at 92. Those exceptions, we held, encompass cases where state law "did not recognize the taking that occurred, or did not permit the relief required to make the plaintiff whole," for instance, where state law did not permit an inverse condemnation cause of action for regulatory takings, or where such actions were limited to monetary damages and the plaintiff's damages were not quantifiable. Id. (citing cases). Our opinion in Pascoag concluded:

> Pascoag cannot show that Rhode Island's remedies were inadequate or unavailable. The Rhode Island Constitution prohibits the taking of private property for public use without just compensation and Rhode Island state courts have long allowed recovery through suits for inverse condemnation. Thus, Rhode Island has an adequate process available to address Pascoag's suit for just compensation.

Id. at 93 (citations omitted).

Downing's arguments to the contrary rely on its reading of Flores Galarza, which itself did not purport to overrule the holding in Pascoag.[8] In Flores Galarza, a divided panel held under

_____

[8] The majority did cite Pascoag for the proposition that the finality requirement does not apply to physical takings claims, but otherwise did not discuss Pascoag. See Asociación De Subscripción Conjunta Del Seguro De Resonsabilidad Obligatorio v.

-14-

Puerto Rico law that an unusual type of takings claim was ripe because the plaintiffs were excused from fulfilling the Williamson County requirements. Flores Galarza, 484 F.3d at 13-20. The plaintiffs, a group of automobile insurers in Puerto Rico, sued the Puerto Rico Secretary of the Treasury for withholding from the insurers insurance premiums generated by Puerto Rico's new compulsory liability insurance program. Id. at 6. Under the statutory scheme, the Commonwealth was to transfer to the insurers insurance premiums paid when drivers renewed their licenses, but the Commonwealth temporarily stopped doing so as a result of its own cash-flow problems. Id. at 8-9. The insurers sought compensation for this temporary taking, including for the foregone interest on the premiums and the amounts they were forced to pay from their own funds for reimbursements to drivers that were intended to be paid from the amounts retained by the Commonwealth. Id. at 11. They also sought compensation for the permanent taking they alleged resulted from a change in the law that appropriated to the Commonwealth certain reserve funds accumulated under the insurance scheme. Id.

The majority opinion reasoned that the withholding of funds amounted to a physical taking, not a regulatory one, id. at 15, and that because it involved "the direct appropriation of funds," the Williamson County requirements were wholly

Flores Galarza, 484 F.3d 1, 15 (1st Cir. 2007).

-15-

inapplicable, id. at 19. The majority nonetheless discussed the nature of the state litigation requirement, in language that Downing reads as reframing the Williamson County state litigation requirement:

> The key component of this prong of Williamson County is the availability of a [state] process that is particularly aimed at providing compensation when government action effects a taking. In our view, such procedures do not include litigation of a state takings claim or any general remedial cause of action under state law. Rather, the Supreme Court must have had in mind only those procedures specifically designed by the state to avoid constitutional injury in the first instance by providing a means for a plaintiff to obtain compensation for the government's taking of property.

Id. at 16-17 (emphasis added) (citations omitted). Downing relies on this language to argue that if this is the standard, then Pascoag must be reconsidered.

Downing also relies on other language in the majority opinion that attempts to contrast inverse condemnation proceedings with "any generally available state procedure that might provide a remedy for an uncompensated taking." Id. at 17. The majority concluded that if only the latter was available, a plaintiff need not pursue it to satisfy Williamson County.[9] Id. at 17. This purported distinction was driven in part by reliance on the

---

[9] As we explain below, Downing argues that Rhode Island's judicially created inverse condemnation cause of action is actually, under the framework of Flores Galarza, merely a "generally available state procedure" rather than one "particularly aimed" at addressing its specific type of claim. See Flores Galarza, 484 F.3d at 16-17.

-16-

concerns in Chief Justice Rehnquist's concurrence in <u>San Remo Hotel</u> and the panel majority's consideration that the full Supreme Court might respond to those concerns by narrowing or overruling the state litigation requirement in the near future. <u>See</u> <u>id.</u> at 17-18. As we have said, the Supreme Court has since refused to alter the <u>Williamson County</u> state litigation requirement, and so that basis has disappeared.

One judge concurred in the judgment, disagreeing strongly with the majority's conclusion and analysis on the state litigation rule. The concurring opinion argued, "There is no support in Supreme Court precedent for the conclusion that claimants are relieved of the litigation requirement unless the state has adopted specific processes . . . through which such compensation may be recovered." <u>Id.</u> at 38 (Howard, J., concurring in the judgment). "It is not enough to show only that the adequacy of state process remains unsure and undeveloped"; it must be affirmatively shown to be unavailable or inadequate. <u>Id.</u> at 40.

The majority's analysis was, as the district court in this case recognized, called into question by the en banc court. Three judges (a clear majority of the court's five active judges at the time, four of whom participated in the matter) wrote in a statement accompanying an order denying en banc review, "It appears to us that the panel majority decision likely conflicts directly with binding Supreme Court authority and prior decisions in this

-17-

court, as well as the law in other circuits." Id. at 40 (statement accompanying denial of reh'g en banc) (footnotes omitted). The three judges emphasized, as had the concurrence, that plaintiffs must carry "the burden of demonstrating the absolute lack of . . . a state proceeding" in which compensation could be available, and that the court's precedent had previously determined that "such a proceeding and a remedy may very well exist under the Puerto Rico Constitution." Id. at 41 (citing Deniz, 285 F.3d at 146-47). Nonetheless, the court denied rehearing en banc because the case had arisen on interlocutory appeal and error correction would be available if necessary on appeal from final judgment. Id. Moreover, the statement concluded, to the extent the majority opinion had reached a result contrary to Supreme Court and First Circuit precedent, it was without authority to do so. Id. at 40. As we explain below, we too now reject application of the language and reasoning in the Flores Galarza majority opinion that purportedly reworked the Williamson County state litigation test as contrary to Supreme Court and circuit precedent.

B. Downing Is Not Excused from Meeting the State Litigation Prong

Downing acknowledges that it never initiated an inverse condemnation proceeding in Rhode Island state court, but went instead directly to federal court. Downing argues that it was excused from Williamson County's state litigation requirement because Rhode Island's state law remedies are "unavailable" or

-18-

"inadequate." See Williamson County, 473 U.S. at 196-97; Pascoag, 337 F.3d at 92. But we concluded in Pascoag that the Rhode Island courts "have long allowed recovery through suits for inverse condemnation. Thus, Rhode Island has an adequate process available" to takings plaintiffs, and plaintiffs must resort to it before their federal takings claims will ripen. Pascoag, 337 F.3d at 93. As the district court aptly stated, Pascoag "looks like a trapdoor straight to state court for Downing." Downing, 698 F. Supp. 2d at 282.

Downing has two arguments in reply. First, it argues that Flores Galarza overruled Pascoag as to Rhode Island's inverse condemnation cause of action and set forth a higher standard for state remedies that Rhode Island's inverse condemnation cause of action does not meet. Second, it argues that all the Pascoag court held was that the plaintiff in that case had not proven the inadequacy or unavailability of the Rhode Island inverse condemnation procedure, and that the state procedure suffers from defects not considered in Pascoag that make it not a "reasonable, certain and adequate provision for obtaining compensation." Williamson County, 473 U.S. at 194 (quoting Reg'l Rail Reorg. Act Cases, 419 U.S. at 124-25) (internal quotation marks omitted).

## 1. We Reject Downing's Arguments that We May Alter the Williamson County Test Based on Flores Galarza

We turn first to Downing's arguments relating to Flores Galarza. Downing argues that Rhode Island's inverse condemnation proceeding falls on the wrong side of the line drawn in Flores Galarza between "a process that is particularly aimed," Flores Galarza, 484 F.3d at 16, at compensating property owners to prevent constitutional injury and a "general remedial cause of action" such as a state takings claim that provides damages for a constitutional injury, id. at 17. Downing argues that because in Annicelli v. Town of South Kingstown, 463 A.2d 133 (R.I. 1983), the case in which the Rhode Island Supreme Court recognized an inverse condemnation cause of action for regulatory takings, the state court "did not develop any particularized procedure for obtaining compensation for a taking," as Downing puts it, the cause of action is insufficient under the rule in Flores Galarza. Downing argues that it would be bound to bring a state inverse condemnation claim only if the Rhode Island Supreme Court or legislature had crafted an inverse condemnation scheme as "particularly aimed," Flores Galarza, 484 F.3d at 16, and as detailed as the statutory compensation schemes the state has legislatively created for wetland owners denied permission to alter their land, R.I. Gen. Laws § 2-1-21(b), and property owners whose land the state takes for public use through condemnation, see, e.g., R.I. Gen. Laws

-20-

§ 42-64-9 (land condemned by state Economic Development Corporation).

Downing's argument depends on the proposition that <u>Flores Galarza</u> narrowed <u>Williamson County</u> generally by heightening the standard for adequate state procedures. If that proposition were correct, Downing might have an argument. But <u>Flores Galarza</u> could not overrule prior circuit law. <u>See</u> <u>Pascoag</u>, 337 F.3d at 93; <u>Deniz</u>, 285 F.3d at 147; <u>Gilbert</u> v. <u>City of Cambridge</u>, 932 F.2d 51, 65 (1st Cir. 1991) (holding plaintiffs had not satisfied burden of proving Massachusetts inverse condemnation proceeding could not apply to the type of taking they alleged).[10] Nor could the panel majority revise a test created by the Supreme Court. <u>See</u> <u>Williamson County</u>, 473 U.S. at 195-97. The en banc statement of this court made that point, and we elaborate.

To the extent that language in the <u>Flores Galarza</u> majority opinion can be read to say the plaintiffs do not bear the burden of proving the inadequacy or unavailability of state procedures for seeking compensation, that language cannot be squared with either Supreme Court or First Circuit precedent. The <u>Flores Galarza</u> majority expressly refused to "requir[e] plaintiffs

---

[10] The plaintiffs in <u>Gilbert</u> petitioned for a writ of certiorari, asking the Supreme Court to reconsider the <u>Williamson County</u> state litigation rule. <u>See</u> Opposition to Petition for Writ of Certiorari at <u>i</u>, <u>Gilbert</u> v. <u>City of Cambridge</u>, No. 91-209 (U.S. Aug. 30, 1991), 1991 WL 11178604. The Supreme Court denied the petition. <u>Gilbert</u> v. <u>City of Cambridge</u>, 502 U.S. 866 (1991).

-21-

to invoke any generally available state procedure that <u>might</u> provide a remedy for an uncompensated taking." <u>Flores Galarza</u>, 484 F.3d at 17 (emphasis added). But in <u>Williamson County</u> the Supreme Court clearly placed the burden of proving the inadequacy of state law remedies on the plaintiff. <u>Williamson County</u>, 473 U.S. at 197 (finding that plaintiff "has not shown that the [state's] inverse condemnation procedure is unavailable or inadequate . . . .").

In the First Circuit, "It is well settled that the burden of demonstrating the absolute lack of [an adequate] state proceeding is on the plaintiff." <u>Flores Galarza</u>, 484 F.3d at 41 (statement accompanying denial of reh'g en banc) (citing <u>Deniz</u>, 285 F.3d at 146); <u>see</u> <u>also</u> <u>Estate of Bennett</u> v. <u>Wainwright</u>, 548 F.3d 155, 165 (1st Cir. 2008). Even where "the most that can be said is that it remains unclear whether the inverse condemnation remedy applies" to the type of taking alleged by the plaintiff, the state litigation requirement is not excused. <u>Deniz</u>, 285 F.3d at 147; <u>see</u> <u>also</u> <u>Gilbert</u>, 932 F.2d at 65; <u>Culebras Enters. Corp.</u> v. <u>Rivera Rios</u>, 813 F.2d 506, 514-15 (1st Cir. 1987). To be excused, the plaintiff must demonstrate that the state law "expressly precludes use of the inverse condemnation remedy" in the plaintiff's case. <u>Deniz</u>, 285 F.3d at 147. We have relied on this allocation of the burden of proof since <u>Flores Galarza</u> as well. <u>See</u> <u>García-Rubiera</u>, 570 F.3d at 451.

Our sister circuits agree that the burden is on the plaintiff to prove the absolute unavailability or inadequacy of potential state remedies in order to be excused from the state litigation requirement. See, e.g., Island Park, LLC v. CSX Transp., 559 F.3d 96, 109 (2d Cir. 2009) (plaintiff must pursue even unsure and undeveloped possibilities for relief); Rockstead v. City of Crystal Lake, 486 F.3d 963, 965-66 (7th Cir. 2007) (plaintiff must challenge out-of-date state common law precedent denying validity of particular type of inverse condemnation claim); Urban Developers LLC v. City of Jackson, Miss., 468 F.3d 281, 295 (5th Cir. 2006); Austin v. City & Cnty. of Honolulu, 840 F.2d 678, 680 (9th Cir. 1988).

Other language in Flores Galarza, if read a certain way, would also conflict with Supreme Court precedent. The majority held that a plaintiff is excused from the state litigation requirement if the only remedy available under state law is a general state takings claim. Flores Galarza, 484 F.3d at 17-18. But the Supreme Court in San Remo Hotel, decided two years before Flores Galarza, abrogated a Second Circuit case holding "that parties 'who litigate state-law takings claims in state court involuntarily' pursuant to Williamson County cannot be precluded from having those claims resolved 'by a federal court,'" San Remo Hotel, 545 U.S. at 342 (emphasis added) (quoting Santini v. Connecticut Hazardous Waste Mgmt. Serv., 342 F.3d 118, 130 (2d Cir.

-23-

2003)).  The Court thereby expressly recognized that to satisfy the
Williamson County state litigation requirement, plaintiffs must
bring state taking claims in state court where they are available.[11]

Indeed, other circuits to face the question have held
that plaintiffs must pursue claims under the takings clause of a
state constitution even when there is no judicial or legislative
inverse condemnation procedure already definitively established.
See, e.g., Island Park, 559 F.3d at 110 (Second Circuit);
Bickerstaff Clay Prods. Co., Inc. v. Harris Cnty., Ga., 89 F.3d
1481, 1491 (11th Cir. 1996) (plaintiff must bring suit under
eminent domain provision of Georgia Constitution to determine
whether state law compensates temporary takings); Bateman v. City
of West Bountiful, 89 F.3d 704, 708-09 (10th Cir. 1996); Austin,
840 F.2d at 681 (Ninth Circuit); cf. Peters v. Vill. of Clifton,
498 F.3d 727, 733-34 & n.6 (7th Cir. 2007) (finding Illinois courts
had developed adequate remedy, but adding that in other circuits
where the issue was raised, courts have found adequate the "self-
executing [takings] provision of a state's constitution").

---

[11]    There is also reason to think that, despite its broad
language, Flores Galarza did not intend to alter the rule in
Pascoag.   The Flores Galarza majority repeatedly referred to
inverse condemnation proceedings, whether created by statute or
judicial recognition, as being appropriate state procedures under
Williamson County.  See Flores Galarza, 484 F.3d at 16-18 & n.21.

-24-

## 2. Downing's Other Attacks on Pascoag Also Fail

Downing also argues that the holding in Pascoag, that Rhode Island has made available an adequate state-law remedy that plaintiffs must pursue before their federal takings claims will ripen, has no binding force in its case, even if Pascoag is binding precedent. However, the main thrust of even these arguments is that Pascoag insufficiently considered whether Rhode Island's inverse condemnation proceedings met the adequacy standards set forth in Flores Galarza, and so the arguments are disposed of under our rejection of a reading of Flores Galarza as narrowing the state litigation requirement.

Downing also attempts to distinguish its case from Pascoag on the facts, arguing that Pascoag is inapposite because it involved a different type of alleged taking, arising from the state's acquisition of the plaintiff's land by adverse possession and prescriptive easement, rather than from the actions of state regulatory agencies as in Downing's case. The specific mechanism of the alleged taking had no bearing on our consideration of the Williamson County ripeness requirements in Pascoag. See Pascoag, 337 F.3d at 90. Because Downing bears the absolute burden of proving Rhode Island's inverse condemnation proceeding is unavailable or inadequate in its particular case, it is insufficient to argue only that the alleged taking in its case is different from the alleged taking in Pascoag.

-25-

Downing further argues that deficiencies in the remedies available to it in state court render those remedies inadequate under Williamson County. Rhode Island, Downing argues, has no statute comparable to federal statutes permitting recovery of attorneys' fees or pre-judgment statutory interest on awarded compensation. See 28 U.S.C. § 1961 (interest); 42 U.S.C. § 1988(a) (fees); Andrade v. State, 448 A.2d 1293, 1295 (R.I. 1982) (holding Rhode Island did not waive sovereign immunity as to pre-judgment interest). Exact equivalence of damages is not required; just compensation is. Culebras, 813 F.2d at 514 (holding that potential differences between Puerto Rico and federal remedies did not render potential Puerto Rico inverse condemnation remedy inadequate, "[s]o long as just compensation is provided").

Finally, Downing argues that because Rhode Island has not statutorily waived sovereign immunity for inverse condemnation claims as it has for statutory condemnation procedures, the remedy is uncertain. This allegation cannot satisfy Downing's burden to show absolute unavailability in light of the Rhode Island Supreme Court's decisions repeatedly reaching the merits in inverse condemnation cases. See Palazzolo, 533 U.S. at 611, 616 (reviewing, and partially reversing, Rhode Island Supreme Court's decision that CRMC's denial of a plaintiff's development permit did not constitute a regulatory taking); Woodland Manor III Assocs. v. Keeney, 713 A.2d 806, 811-12, 814 (R.I. 1998) (remanding for trial

-26-

on plaintiff's claim of temporary regulatory taking); <u>Annicelli</u>, 463 A.2d at 141 (remanding for determination of property's fair market value for purposes of compensation).

## IV. <u>Remaining Arguments</u>

Because Downing must show it has fulfilled or is excused from both prongs of the <u>Williamson</u> ripeness requirements, and we have found that Downing has failed to make this showing as to the state litigation requirement, we need not address the other prong, the finality requirement.

As to Downing's other federal claims, Downing argues strenuously in its reply brief that it has not waived its due process claims, because it has argued that the entire district court decision was erroneous. Downing's opening brief makes frequent passing reference to Downing's due process claims, but provides no argument explaining why those claims should survive in federal court even if its takings claims are found to be unripe, the issue of primary relevance as to these claims at this stage in the proceedings. Nor did Downing make any such argument in the district court. The argument is doubly waived. <u>Cortes-Rivera</u> v. <u>Dep't of Corr. & Rehab.</u>, 626 F.3d 21, 27 (1st Cir. 2010) ("We decline to address the issue both because it was neither preserved nor adequately presented in the district court and because it is not adequately presented on appeal."); <u>id.</u> at 26 (holding that an argument raised in a perfunctory manner is deemed waived).

We decline to address the issues raised for the first time by amicus in its brief, which argues that <u>Williamson County</u>'s ripeness rules apply only to Takings Clause claims, leaving plaintiffs free to pursue in federal court Due Process Clause and Equal Protection Clause claims that arise from the same allegedly illegal state conduct. "[A]mici may not make up for waiver by a party," <u>Family Winemakers of Cal.</u> v. <u>Jenkins</u>, 592 F.3d 1, 17 n.23 (1st Cir. 2010), and may not introduce a new argument into a case, <u>Pharm. Research & Mfrs. of Am.</u> v. <u>Concannon</u>, 249 F.3d 66, 74 n.5 (1st Cir. 1996). We note only that we have previously held that plaintiffs cannot, merely by recasting its takings claim "in the raiment of a due process violation," evade the <u>Williamson County</u> ripeness requirements. <u>Deniz</u>, 285 F.3d at 149.

While the two agencies strenuously deny that they have been unresponsive or have unreasonably delayed their decisions on Downing's project, we express the hope that the parties will promptly attempt to resolve any remaining disagreements.

<u>Affirmed.</u>